UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SUNCOAST WATERKEEPER, OUR
CHILDREN'S EARTH FOUNDATION, and
ECOLOGICAL RIGHTS FOUNDATION

             Plaintiffs,

    v.

CITY OF GULFPORT,

             Defendant.

Case No. 8:17-cv-0035-SCB-AEP

## STIPULATED ORDER OF DISMISSAL

## AND COURT'S RETENTION OF JURISDICTION

Plaintiffs Suncoast Waterkeeper, Our Children's Earth Foundation, and Ecological Rights Foundation ("Environmental Groups" or "Plaintiffs") and Defendant the City of Gulfport, Florida ("City" or "Defendant") hereby enter into this Stipulated Order of Dismissal and Court's Retention of Jurisdiction ("Stipulated Order") in settlement of this action.

**NOW, THEREFORE,** the Parties hereby stipulate and the Court orders as follows:

1. **Injunctive Relief and Remedy:** By December 31, 2022, the City will design and construct a "By-Pass Project" within its wastewater collection system as described in

Exhibit A. The By-Pass Project requires that the City modify Gulfport Lift Station 2 and construct a new force-main line that will redirect wastewater flow from Lift Station 2 to provide a by-pass of Gulfport's Lift Station 1. The new force-main line from Lift Station 2 will connect to the existing force main from Lift Station 1 that leads to the City of St. Petersburg wastewater collection system. The By-Pass Project is expected to enhance the City's wastewater collection system and reduce the risk of sanitary sewer overflows ("SSO's"). For the purposes of this Stipulated Order an SSO is defined as an overflow, spill or release of untreated sewage from the Gulfport wastewater collection system ("WCS") that reaches the Gulfport storm-water system or a "navigable water" of the United States as defined by the Clean Water Act.

2. **Stipulated Penalties:** Should Gulfport experience an SSO between its execution of this Stipulated Order and the Termination Date, Gulfport will be liable for payment of a stipulated penalty pursuant to the following schedule:

Less than 1,000 gallons: $200 per spill

1,000 to 9,999 gallons: $1,000 per spill

10,000 gallons or more: $25,000 per spill

For each SSO of 1,000 gallons or more that does not reach navigable waters, the amount of the stipulated penalty assessed will be half of the amounts listed above, with the burden on Gulfport to demonstrate that any untreated sewage that overflowed, spilled or was released from its WCS did not reach a navigable water. Further, the stipulated penalty due hereunder shall be reduced by any penalty assessed by the Florida Department of Environmental Protection ("FDEP") for the same SSO. All stipulated penalties due hereunder will be paid

to Tampa Bay Estuaries Program, within ninety (90) days of the SSO, with a copy of such payment to Plaintiffs' representatives identified in Paragraph 4 and will include identification of the date(s) and location of the SSO(s).  Gulfport will not be liable for stipulated penalties under this Paragraph 2 if Gulfport provides documentation establishing that (1) the SSO was caused due to war, the mandatory evacuation of all City public works personnel, or by an Act of God, vandalism, terrorism, a non-City Contractor, or any act of a third party not working directly or indirectly on behalf of Gulfport, and (2) Gulfport took all reasonable measures to prevent such SSO.  "Act of God" under this Paragraph will mean an SSO that directly results from a weather related event such as fire, lightning strike, tornado, flood, sinkhole, tidal wave, tsunami, or a tropical storm or hurricane, provided such storm or hurricane meets or exceeds the NOAA definition of a 25 year return storm event for Gulfport, in terms of rain over a 24 hour or greater time period, or involves a flood elevation of 2.0 N.A.V.D or higher, or some combination of the above.

3. **Additional Public Interest Project:**  By December 31, 2022, Gulfport shall complete the "Living Shoreline Project" described in Exhibit B attached hereto, which is expected to result in significant environmental benefits to the shoreline, marine ecosystem and bay waters adjacent to the City.  If Gulfport fails to complete this project by the required date, Gulfport shall make a $25,000 payment to Tampa Bay Estuary Program (263 13th Avenue South, Suite 350, St. Petersburg, FL 33701) by no later than January 15, 2023, to be used for projects to secure significant environmental benefits to the watersheds and ocean waters in and adjacent to the City.  A copy of such payment shall be sent to the Plaintiffs under Paragraph 4.

4. **Reporting and Communication between the Parties**: Gulfport through its staff or consulting engineers will provide to the Plaintiffs semi-annual reports containing a description of the progress, status and upcoming work on the FDEP Amended Consent Order, By-Pass Project and Additional Public Interest Project. Status reports submitted to FDEP may be included to fulfill part of the requirements of this Paragraph, and reports hereunder will begin with a report filed no later than November 14, 2019 and be provided to Plaintiffs every six (6) months thereafter. If additional documents are requested by Plaintiffs, the City will reasonably respond with documents in the City's or it's consultant's possession. The City will provide contemporaneous courtesy copies to Plaintiffs of all correspondence with FDEP regarding Consent Order No. 17-0028 and the By-Pass Project, until Termination. All documents and payments required to be forwarded by one Party to another shall be sent to the following individuals as electronic computer files at the e-mail addresses specified below, or to a mailing address if a given document cannot be e-mailed. Any change in the individuals designated by either Party must be made in writing to the other Parties.

Plaintiff Environmental Groups:

Executive Director
Suncoast Waterkeeper
P.O. Box 1028
Sarasota, FL 34230
jbloom@suncoastwaterkeeper.org

Defendant City of Gulfport:

Public Works Director
City of Gulfport
2401 53rd Street South
Gulfport, FL  33707
TNicholls@mgulfport.us

City Attorney
City of Gulfport
c/o Andrew J. Salzman, Esq.
Unice Salzman Jensen, P.A.
1815 Little Road
Trinity, FL  34655
ASalzman@unicesalzman.com

5.     **Incorporation and Modification:** This Stipulated Order and its Exhibits contain the entire agreement between the Parties and no material modifications shall be valid unless in writing, mutually agreed to and executed by the Parties, and entered by the Court. Non-material changes to this Stipulated Order, including its Exhibits, may be made by written agreement of the Parties without Court approval and such written modifications shall be deemed incorporated into this Stipulated Order.

6.     **Dispute Resolution**:  The Dispute Resolution procedure of this Paragraph is the exclusive mechanism to resolve any disputes arising under this Stipulated Order and its Exhibits except with respect to Termination under Paragraph 9 or otherwise mutually agreed to in writing by the Parties. Any dispute that arises under this Stipulated Order will initially be subject to a period of informal negotiations, which will not extend beyond thirty (30) days unless the Parties otherwise mutually agree in writing to an extension of the informal negotiation period and/or a mediation process. The dispute will be considered to have arisen on the date one Party receives written notification from the other, specifically referencing this

Paragraph, that there is a dispute. Such notice must clearly state the matter in dispute. If the Parties cannot resolve a dispute by informal negotiations, whether before or immediately after the lapse of the thirty (30) day informal negotiation period (or lapse of any extension which was agreed to in writing by the Parties), then the Parties must seek the intervening role of a certified federal court mediator, with such individual chosen by mutual agreement of the Parties. If the Parties cannot agree upon a mediator after exchanging no fewer than five (5) proposed mediator recommendations per party, then after a period of thirty (30) days (following the expiration of the informal negotiation period), either Party may file a dispute resolution motion with the Court. The mediation period shall not extend beyond forty-five (45) days from the end of the informal negotiation period, unless the Parties otherwise mutually agree in writing to an extension of the mediation period. If the Parties cannot resolve a dispute by mediation, at the conclusion of the forty-five (45) day mediation period, either Party may file a dispute resolution motion with the court. The motion shall refer to this Stipulated Order and Paragraph 6, and shall set forth the nature of the dispute and a proposal for its resolution. The opposing Party will have thirty (30) days in which to file a response with an alternate proposal for resolution. As to any and all disputes under this Paragraph, the Court shall determine which proposed resolution is most appropriate, in light of the circumstances and proposals presented to it and consistent with the Clean Water Act.

       7.   **Attorneys' Fees and Costs**: Within thirty (30) days of the date of entry of this Stipulated Order, Defendant shall pay a total of $649,000 for Plaintiffs' attorneys' fees, expert fees and costs incurred through the date of Defendant's signature on this document and for costs of Plaintiffs' professional engineers to monitor Defendant's compliance with

the terms of this settlement until Termination. 33 U.S.C. § 1365(d). Payment will be made by check payable to Environmental Advocates Attorney Client Trust Account. The settlement payment is made based on Gulfport's receipt and review, by the date of execution of this Stipulated Order, of Plaintiffs' contracts with attorneys and experts, invoices for services and costs, and evidence of payment or obligation for such services and costs that demonstrate expenditures or obligations for reasonable fees and costs relating directly to this litigation that exceed the settlement payment.

8. **Effective Date**: This Stipulated Order becomes effective on the date signed and entered by the Court, following the requisite forty-five (45) day review period by the United States under Section 505(c)(3) of the Clean Water Act. 33 U.S.C. § 1365(c)(3). Plaintiffs are responsible for providing a copy of this Stipulated Order to the United States Environmental Protection Agency and the United States Department of Justice.

9. **Termination**: Defendant shall initiate termination by certifying to Plaintiffs full completion of all requirements of this Stipulated Order, as follows: (1) The By-Pass Project required under Paragraph 1 has been constructed and is fully operational; (2) any stipulated penalties under Paragraph 2 have been paid in full; and (3) the Additional Public Interest Project under Paragraph 3 has been completed or the $25,000 payment to the Tampa Bay Estuary Program has been made. Plaintiffs will respond to Gulfport's certification within fourteen (14) days of receipt of certification. If Plaintiffs agree with Gulfport's certification of completion, then the Parties shall file a joint motion for termination in substantially the same form as Exhibit C attached hereto. If Plaintiffs dispute Defendant's completion of the requirements hereunder, the Defendant may move the Court for termination of the Stipulated

Order on the basis that it has completed all requirements identified in this Paragraph. Such motion must adhere to the Local Rules requiring a meet and confer process prior to the filing of such motion and an opportunity for Plaintiffs to brief the matter to the Court in response to the motion. The Court's review of any such motion will be limited to a determination as to whether Gulfport has completed all of the requirements identified in this Paragraph.

10. **Retention of Jurisdiction and Dismissal**: The Court shall retain jurisdiction to enforce the terms of this Stipulated Order and its Exhibits until Termination. In consideration of Defendant's agreement to this Stipulated Order and Exhibits, Plaintiffs' claims alleged in the Complaint through the Effective Date are dismissed with prejudice consistent with the terms and condition of this Stipulated Order. The settlement of this action as embodied in this Stipulated Order and its Exhibits is fair, reasonable, in the public interest, and furthers the objectives of the Clean Water Act. The Parties agree that (1) this Stipulated Order will fully and finally resolve, and release the City of Gulfport, from any and all of Plaintiffs' claims for civil penalties, attorneys' fees, costs, declaratory and injunctive relief, which have been asserted, or could have been asserted against Gulfport, in this action, for alleged Clean Water Act violations, and for any other claim for damages, civil penalties, attorneys' fees, costs, or other relief Plaintiffs have or may have against Gulfport under the Clean Water Act or any other state or Federal environmental law or statute, arising prior to the Effective Date; and (2) this Stipulated Order does not resolve or release any claims arising under state law from the City's non-compliance with the requirements of the Amended Consent Order OGC No. 17-0028 subsequent to the Effective Date. Plaintiffs reserve the right to bring an action in state court pursuant to Florida Law, to enforce the

City's compliance with the corrective actions required under the Amended Consent Order, and in any such action brought during the term of this Stipulated Order, the City shall not assert any objection to Plaintiffs' standing or assert that the mere existence of the Consent Order amounts to diligent prosecution.

11. **No Admission of Liability:** The Parties agreement to this Stipulated Order and its entry by the Court does not constitute an admission by either Party to any of the claims or allegations in the pleadings filed in this case or otherwise raised in any paper filed, or arguments raised, during this litigation. Further the City's agreement to perform the By-Pass project, Additional Public Interest Project, or payment in lieu, is not an admission of, or evidence that the projects are, or payment is necessary to provide compliance with, or resolve any past violation of, the Clean Water Act. Finally, the City's payment of Plaintiffs' attorney and expert fees and costs is not an admission to, evidence of, or a determination that, the Plaintiffs were the prevailing party in this litigation.

**IT IS SO STIPULATED** through agreement of all Parties to this action and their counsel.

Respectfully submitted,

_____, 2019

*FOR PLAINTIFFS:*

_____ / 6/24/19 _____
Andre Mele, Interim Executive Director                    (Date)
Suncoast Waterkeeper

_____ / _____
Tiffany Schauer, Executive Director                    (Date)
Our Children's Earth Foundation

_____ / _____
James Lamport, Executive Director                    (Date)
Ecological Rights Foundation

*PLAINTIFFS' COUNSEL:*

/s/ Justin Bloom                            /s/ Kathryn Schmidt
Justin Bloom                                Kathryn Schmidt, *Pro Hac Vice*
FL Bar # 89109                              Van Ness Feldman LLP
Justin Bloom Attorney at Law, PA            1050 Thomas Jefferson St. NW
P.O. Box 1028                               Washington, DC 20007
Sarasota, FL 34230                          P: 202.298.1982
Telephone: (917) 991-7593                   F: 202.338.2361
Facsimile: (866) 574-2169                   E: kschmidt@vnf.com
Email: bloomesq1@gmail.com

*Attorneys for Plaintiffs, SUNCOAST WATERKEEPER, OUR CHILDREN'S EARTH FOUNDATION, ECOLOGICAL RIGHTS FOUNDATION*

**IT IS SO STIPULATED** through agreement of all Parties to this action and their counsel.

Respectfully submitted,

_____, 2019

### FOR PLAINTIFFS:

_____ /_____
Andre Mele, Interim Executive Director          (Date)
Suncoast Waterkeeper

_____ /   6/25/2019
Tiffany Schauer, Executive Director          (Date)
Our Children's Earth Foundation

_____ /_____
James Lamport, Executive Director          (Date)
Ecological Rights Foundation

### PLAINTIFFS' COUNSEL:

/s/ Justin Bloom                              /s/ Kathryn Schmidt
Justin Bloom                                  Kathryn Schmidt, Pro Hac Vice
FL Bar # 89109                                Van Ness Feldman LLP
Justin Bloom Attorney at Law, PA              1050 Thomas Jefferson St. NW
P.O. Box 1028                                 Washington, DC 20007
Sarasota, FL 34230                            P: 202.298.1982
Telephone: (917) 991-7593                     F: 202.338.2361
Facsimile: (866) 574-2169                     E: kschmidt@vnf.com
Email: bloomesq1@gmail.com

*Attorneys for Plaintiffs, SUNCOAST WATERKEEPER, OUR CHILDREN'S EARTH FOUNDATION, ECOLOGICAL RIGHTS FOUNDATION*

**IT IS SO STIPULATED** through agreement of all Parties to this action and their

counsel.

Respectfully submitted,

_____, 2019


**FOR PLAINTIFFS:**


_____/_____
Andre Mele, Interim Executive Director          (Date)
Suncoast Waterkeeper


_____/_____
Tiffany Schauer, Executive Director          (Date)
Our Children's Earth Foundation


_____ EE. / 6/25/19 _____
James Lamport, Executive Director          (Date)
Ecological Rights Foundation


**PLAINTIFFS' COUNSEL:**

/s/ Justin Bloom                              /s/ Kathryn Schmidt
Justin Bloom                                  Kathryn Schmidt, *Pro Hac Vice*
FL Bar # 89109                                Van Ness Feldman LLP
Justin Bloom Attorney at Law, PA              1050 Thomas Jefferson St. NW
P.O. Box 1028                                 Washington, DC 20007
Sarasota, FL 34230                            P: 202.298.1982
Telephone: (917) 991-7593                     F: 202.338.2361
Facsimile: (866) 574-2169                     E: kschmidt@vnf.com
Email: bloomesq1@gmail.com


*Attorneys for Plaintiffs, SUNCOAST WATERKEEPER, OUR CHILDREN'S EARTH
FOUNDATION, ECOLOGICAL RIGHTS FOUNDATION*

**_FOR DEFENDANT THE CITY OF GULFPORT_**_:_

I, Samuel Henderson, the duly elected Mayor of the City of Gulfport, Florida, am authorized
by Resolution of the Gulfport City Council dated **24-Jun** 2019, to enter into this
settlement agreement on behalf of the City:

24-Jun-19

Samuel Henderson,                                                                                           (Date)
Mayor of the City of Gulfport, Florida

**_DEFENSE COUNSEL:_**

_/s/ Kevin H. Hennessy_
KEVIN S. HENNESSY, ESQUIRE
Florida Bar No. 0602558
RICHARD P. GREEN, ESQUIRE
Florida Bar No. 0119530
LEWIS, LONGMAN & WALKER, P.A.
100 Second Avenue South, Suite 501-S
St. Petersburg, FL 33701
Telephone: (727) 245-0820
Facsimile: (727) 290-4057
Primary Email: khennessy@llw-law.com
rgreen@llw-law.com
Secondary Email: jbissette@llw-law.com
jdavy@llw-law.com

_Attorneys for Defendant the City of Gulfport, Florida_

Pursuant to the foregoing stipulation of the Parties, **IT IS SO ORDERED** this 13ᵗʰ

day of _August_ , 2019.

Susan C. Bucklew
**United States District Judge**

**Exhibits to Stipulated Order:**

A. Statement of Work and Diagram Describing By-Pass Project
B. Living Shoreline Project at Breakwater Park
C. Proposed Form for Joint Motion to Terminate

# EXHIBIT A

01152701-2

City of Gulfport LS 2
WCS Improvement By-pass project
Developed for purposes of Settlement
Suncoast Waterkeeper et. al. v. City of Gulfport
April 30, 2019

To have LS 2 pump independently to the City of St. Petersburg, the following (simplified) would need to be accomplished:

1) Extend existing LS 2 force main (FM) from 31st Ave S. to 53rd St. S. (where it discharges into the gravity sewer system) to LS 1, located at 29th Ave. S. and Miriam St. S. and connects the force mains together.
2) Revise the existing valve vault and flow meter at LS 1 to accommodate the FM from LS 2.
3) Upgrade/replace the existing pumps at LS 2 to provide additional pumping distance (Head) to St. Pete sewer system. Verify LS 1 pumps can meet new pumping requirements (Mani-folding with LS 2).
4) Upgrade electrical controls/emergency generator at LS 2 to accommodate new pumps, if required.
5) Verify/Modify LS 1 and LS 2 flow meters for proper size (gallons per minute, feet per second, etc.) Replace if required.

St. Pete would have to agree to the project. A final design report, plans and specifications would need to be developed and the project advertised for bid.

# EXHIBIT B

**GHS Environmental**
PO Box 55802
St. Petersburg, FL 33732-5802
727-667-6786

October 5, 2018

Southwest Florida Water Management District
Attn: Cooperative Funding Program Administrator
2379 Broad Street
Brooksville, Florida 34604

Subject:     **City of Gulfport**
             **Breakwater Park Living Shoreline**
             **Additional Project Information**

Dear CFI Administrator:

GHS Environmental (GHS) is pleased to submit this summary letter to provide additional details regarding the City of Gulfport's Breakwater Park Living Shoreline CFI project submittal application.

**Overall Project Summary**

The City of Gulfport is in the process of designing and permitting a living shoreline located in Boca Ciega Bay Aquatic Preserve adjacent to the Gulfport Municipal Marina and the Gulfport Yacht Club.  The living shoreline project combines both soft and hard, living techniques to protect the existing seawall protecting these marinas.  The project area is directly adjacent to Clam Bayou and, ultimately, connects to Tampa Bay prior to reaching the Gulf of Mexico.  Figure 1 shows the location of the project in relation to Clam Bayou, Boca Ciega Bay Aquatic Preserve, Tampa Bay, and the Gulf of Mexico.

**Project Components**

The proposed design of the living shoreline includes layering of soft and hard techniques that will provide various advantages from shoreline stabilization, wave attenuation, sediment and nutrient capture, water quality improvements, and habitat creation.  From the seawall to the upper reaches of the high tide, various dune and marsh grass vegetation is proposed to be planted specifically to trap sediments, absorb nutrients, and create a transition zone between uplands, the seawall, and the water's edge that will attract birds and other land dwelling animals that venture into very shallow marine environments.  In the tidal zone, hard structure, either oyster domes or oyster bags, will be installed in areas currently void of rip rap or existing habitat.  This will minimize wave attenuation, improve shoreline stability, create fish, oyster and invertebrate habitat, and provide water quality improvements as such communities begin to settle.  In the subtidal zone, seagrass will be planted in areas currently void of habitat.  Figure 2 shows the overall site and proposed location of enhancement.  Please note that the aerial used is from 2017 and the exact location of improvements may change as future work determines the current conditions and habitat types.  Figures 2A through 2C zoom into the various segments of the total project area.

SWFWMD CFI 2020 Funding Applcation
City of Gulfport: Breakwater Park Living Shoreline
October 5, 2018
Page 2

**G**HS

## Upper Reaches of High Tide

The existing conditions from the seawall seaward is a mixture of bare, mucky sand and randomly placed riprap.  In the area where there is bare sand, a mixture of salt-tolerate, aquatic plant types will be planted and will include emergent, submergent and floating species. Spartina, or cordgrass, is a common species found in coastal salt marshes. Other plant species may include, but is not limited to, Juncus roemerianus or black needle rush, Distichils spicata or salt grass, and Salicornia bigelovii or glasswort. In addition to the plantings, terrace or coir logs will be strategically placed in low depression areas. These terrace logs will accumulate sediment and minimize wave action to assist the plantings to reach maturity.  The logs are biodegradable with an average life span of 5 years.

## Tidal Zone

This area expands approximately 3 feet vertically and ranges between 6 to 12 feet in areas of very slight grade. Riprap is sporadically placed along the seawall.   The introduction of hard structure, being either marine grade cement oyster domes or oyster bags made of shell, will be placed in areas where there is no riprap or existing oyster habitat to promote larvae settlement.  Based on a recent study request by the FWC, this area is expected to be able to culture viable oyster habitat as seen by existing communities on the seawalls, marina pilings and other hard structure in the area.

## Subtidal Zone

Seagrass covers a significant area adjacent to the seawall within the project area, and there are areas that have been damaged or destroyed over time.  These areas will be replanted with seagrass for restoration purposes.

## Project Component Areas

The total area for the salt marsh vegetation, oysters and seagrass equals approximately 13,500 square feet.   Table 1 summarizes the square footage of each individual component.

Table 1. Project Components.

| Component | Square Feet | Acres |
|---|---|---|
| Terrace Logs | 436 | 0.01 |
| Oyster | 2,178 | 0.05 |
| Spartina | 436 | 0.01 |
| Seagrass | 10,454 | 0.24 |
| **Total Project** | **13,504** | **0.31** |

Although the conceptual design is layered or tiered, the proposed enhancements and restoration efforts are generally linear and parallel to the seawall.  The total length of is approximately 605 feet.  Figure 2 provides the total length of the project area.

SWFWMD CFI 2020 Funding Application
City of Gulfport: Breakwater Park Living Shoreline
October 5, 2018
Page 3

**GHS**

## Benefits

"Living Shorelines" are becoming popular in many coastal areas as an alternative or additive to typical stabilization techniques such as hardening using seawalls and bulkheads. Many benefits stem from living shorelines that cross several environmental boundaries including habitat creation, water quality improvements, and recreational improvement in addition to the stabilization abilities of erosion reduction and wave attenuation by maintaining the "natural" land to water interface. Living Shorelines also provide many recreational benefits. Table 2 summarizes the various benefits created by living shorelines.

Table 2. Benefits of the Breakwater Park Living Shoreline Project.

| Stabilization | Water Quality | Habitat/Wildlife | Recreational |
|---|---|---|---|
| ♦ Reduces erosion and property loss. | ♦ Improves water quality. | ♦ Provides high ecosystem productivity. | ♦ Bird watching. |
| ♦ Maintains natural sediment movement. | ♦ Filters pollutants and nutrients. | ♦ Provides fish and wildlife habitat. | ♦ Fishing. |
| ♦ Traps sediments. | ♦ Allows tidal exchange. | | ♦ Snorkeling. |
| ♦ Reduces wave energy. | | | ♦ Kayaking. |

## Closing

We thank you for your time to review this additional information. If there are any questions regarding the submitted information, please contact us at 727-667-6786 or at Dana@GHSenvironmental.com.


Sincerely,
**GHS Environmental**

Dana J. Gaydos
Principal



# Figure 1.
# Location Map

**Legend**

**Locations**
* City of Gulfport
★ Project Location
✚ Gulfport Marina

Scale: Miles
0    2    4    8

Date: 10/2/2018

GHS Environmental
PO Box 55802
St. Petersburg, FL 33732-5582
Phone: 727-667-6786
dana@ghsenvironmental.com
www.ghsenvironmental.com

Old Tampa Bay
Hillsboro Bay
Middle Tampa Bay
Lower Tampa Bay



## Figure 2.
## Overall
## Project Concept

**2017 Aerials**

**Private Markers**

■ Green #3

▲ Red #4

**Proposed Project Enhancments**

**TYPE**

▨ Spartina Plantings

▢ Seagrass Plantings

■ Terrace Log

▢ Oyster

| TYPE | Acres |
|---|---|
| Oyster | 0.05 |
| Seagrass Plantings | 0.24 |
| Spartina Plantings | 0.01 |
| Terrace Log | 0.01 |

**Scale:** Feet

0  25  50  100  150

**Date: 10/2/2018**

**GHS**

GHS Environmental
PO Box 55802
St. Petersburg, FL 33732-5582
Phone: 727-667-6786
dana@ghsenvironmental.com
www.ghsenvironmental.com



**Figure 2A. NW Map**

**2017 Aerial**

**Proposed Project Enhancments**

**TYPE**
- Spartina Plantings
- Seagrass Plantings
- Terrace Log
- Oyster

Scale: Feet
0  5  10  20

Date: 10/2/2018

**GHS**

GHS Environmental
PO Box 55802
St. Petersburg, FL 33732-5582
Phone: 727-667-6786
dana@ghsenvironmental.com
www.ghsenvironmental.com



**Figure 2B.
Central Map**

**2017 Aerial**

**Private Markers**
▲ Red #4

**Central Proposed
Project Enhancments**

**TYPE**
▨ Spartina Plantings
▢ Seagrass Plantings
▬ Terrace Log
▢ Oyster

Scale:        Feet
0  10  20      40

Date: 10/2/2018

**GHS**

GHS Environmental
PO Box 5582
St. Petersburg, FL 33732-5582
Phone: 727-667-8786
dana@ghsenvironmental.com
www.ghsenvironmental.com

Red #4

Case 8:17-cv-00035-SCB-AEP   Document 190-1   Filed 12/19/18   Page 77 of 81 PageID 9108



**Figure 2C.
SE Map**

**2017 Aerial**

**SE Proposed Project
Enhancements**

**TYPE**

Spartina Plantings

Terrace Log

Oyster

Scale: Feet
0  10  20  40

Date: 10/2/2018

GHS

GHS Environmental
PO Box 55802
St. Petersburg, FL 33732-5582
Phone: 727-667-6786
dana@ghsenvironmental.com
www.ghsenvironmental.com



**Figure 3.**
**City of Gulfports Complementary Efforts**

2017 Aerial

☆ Project Location
◉ Pump Out Equipment
◎ 49th St Outfall
— SW Pipeline
▭ Clam Bayou
▭ 49th St Outfall Ponds
▭ Tangerine Ave Greenway
▭ FDEP Clean Marina Certified
▭ Living Shoreline Project Boundary

Scale:
Feet
0   500   1,000   2,000

Date: 10/2/2018

**GHS**

GHS Environmental
PO Box 55802
St. Petersburg, FL 33732-5582
Phone: 727-667-6786
dana@ghsenvironmental.com
www.ghsenvironmental.com

EXHIBIT C

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SUNCOAST WATERKEEPER, OUR
CHILDREN'S EARTH FOUNDATION, and
ECOLOGICAL RIGHTS FOUNDATION

              **Case No. 8:17-cv-0035-SCB-AEP**

        Plaintiffs,

   v.

CITY OF GULFPORT,

        Defendant.

---

## JOINT MOTION TO TERMINATE COURT'S JURISDICTION OVER STIPULATED ORDER OF SETTLEMENT (dkt. )

Plaintiffs Suncoast Waterkeeper, Our Children's Earth Foundation, and Ecological Rights Foundation ("Plaintiffs") and Defendant City of Gulfport, pursuant to Paragraph 9 of the Stipulated Order of Dismissal and Court's Retention of Jurisdiction, entered by the Court on _____, 2019 (Dkt. __) ("Stipulated Order"), hereby jointly move the Court to terminate the Stipulated Order.

This motion is based on the Parties' agreement that Defendant has completed all requirements under the Stipulated Order, as follows: (1) The By-Pass Project required under Paragraph **Error! Reference source not found.** of the Stipulated Order has been constructed and is fully operational; (2) any stipulated penalties under Paragraph **Error!**

01152892-1                 1

EXHIBIT C TO STIPULATED ORDER WITH COURT'S RETENTION OF JURISDICTION

(PROPOSED FORM OF JOINT MOTION TO TERMINATE UPON DEFENDANT'S FULL COMPLIANCE)

**Reference source not found.** of the Stipulated Order have been paid in full; and (3) the Additional Public Interest Project under Paragraph **Error! Reference source not found.** of the Stipulated Order has been completed or the $25,000 payment to the Tampa Bay Estuary Program has been made.

Respectfully submitted,

EXHIBIT C TO STIPULATED ORDER WITH COURT'S RETENTION OF JURISDICTION

(PROPOSED FORM OF JOINT MOTION TO TERMINATE UPON DEFENDANT'S FULL COMPLIANCE)